UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL C. HAMILTON,<br>    Plaintiff,<br>v.<br>RON DAVIS, et al.,<br>    Defendants. | Case No. 19-cv-06319-EMC<br><br>**ORDER DENYING REQUEST FOR INTERIM RELIEF**<br><br>Docket No. 11 |

## I.     INTRODUCTION

Paul Hamilton, an inmate at San Quentin State Prison, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. In an order filed December 20, 2019, the Court ordered Mr. Hamilton to show cause why the action should not be dismissed under 28 U.S.C. § 1915(g) because Mr. Hamilton has filed more than three previous actions that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Mr. Hamilton's response to the order to show cause is due by January 24, 2020. In the meantime, Mr. Hamilton has filed a request for an "emergency temporary injunction," Docket No. 11, that is now before the Court for consideration.

## II.     BACKGROUND

In his complaint in this action, Mr. Hamilton alleges the following: Mr. Hamilton takes hydrochlorothiazide for hypertension, a medication that causes him to urinate frequently, especially at night; his urine has an odor. Docket No. 1 at 3. After he urinates, he flushes the toilet in his cell. *Id.* The frequent nocturnal urination and toilet-flushing has "caused many complaints leading to words by any cellmate assigned to the cell," and there "has been hostility in

1  the cell at nights." *Id.* Four cellmates have moved out. *Id.* Mr. Hamilton worries that he or his cellmates might become violent due to the urinating and the toilet-flushing, although no physical violence has occurred or been threatened. *See id.* at 4. Mr. Hamilton filed a request for a reasonable accommodation under the Americans With Disabilities Act (ADA) and the Armstrong Remedial Plan (ARP), seeking a single cell due to his frequent urination. On August 29, 2019, the prison's Reasonable Accommodation Panel rejected his request, determining that his request "did not meet any ADA/ARP criteria." Docket No. 1 at 7. The response noted that Mr. Hamilton had been "evaluated by [his] Primary Care Clinician on August 21, 2019 and it was determined [his] medical conditions or prescribed medications do not exclude [him] from double cell housing." *Id.* 7. Mr. Hamilton admits in his complaint that he did not exhaust his administrative remedies before filing this action. *See id.* at 1-2.

In his request for an "emergency temporary injunction," Mr. Hamilton states that, due to his urinating and toilet-flushing about 5-6 times per night, the situation has "worsened to the point of inmates just up and leaving the cell . . . without incident thus far." Docket No. 11 at 1. He states that his activities wake up cellmates "to a grumpy encounter," and 3-4 inmates "chose to just leave" over the last several months. *Id.* at 2. According to Mr. Hamilton, there is "no telling what could occur in the middle of the night with an irate cellmate who feels he is being disrespected." Mr. Hamilton seeks a temporary restraining order/preliminary injunction compelling prison officials to give him a single cell until this action has been fully litigated.

### III. DISCUSSION

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). A temporary restraining order (TRO) is an "extraordinary remedy" that a court should award only when a plaintiff makes a clear showing that he is entitled to such relief. *See Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). The standards for a TRO are the same as those for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A plaintiff must demonstrate (1) a likelihood of success on the

merits, (2) a likelihood of irreparable harm that will result if an injunction is not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter*, 555 U.S. at 20.[1] The irreparable injury must be both likely and immediate. *See id*. at 22; *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.")

Mr. Hamilton is not entitled to a TRO or preliminary injunction compelling prison officials to house him in a single cell. There are several problems with his request. First, the evidentiary support for the requested TRO falls short of showing that irreparable harm is likely and imminent if interim relief is not granted. Mr. Hamilton's verified request provides no specific information about any actual threat to his physical safety. Indeed, he admits that he does not know whether harm will befall him, as he states under penalty of perjury that there is "no telling what could occur" if a cellmate becomes irate about the nocturnal urination and toilet-flushing. Docket No. 11 at 2. The circumstances described in his complaint and request simply do not show that irreparable harm is likely and imminent if he is not single-celled. Mr. Hamilton's filings show that the frequent urination/toilet flushing situation has existed for about a year and that cellmates have responded with some verbal complaints and perhaps by moving to other cells. Although past results are not a guarantee of future results, the absence of any violence in the past year weighs against a finding that violence is likely or imminent.

Second, Mr. Hamilton has not shown a likelihood of success on the merits of this action. His admitted failure to exhaust administrative remedies before filing this action makes it quite

---

[1] *Winter* did not, however, completely reject the validity of the sliding scale approach to preliminary injunctions. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). Under the "sliding scale" approach used in the Ninth Circuit – also dubbed the "serious question" test in *Alliance for Wild Rockies* -- "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 1131. Thus, even after *Winter*, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132 (citations omitted). The portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).

unlikely that he will prevail on the merits in this action. The requirement that prisoners exhaust administrative remedies, *see* 42 U.S.C. § 1997e(a), is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Courts may not create their own "special circumstances" exceptions to the exhaustion requirement. *Id.* (reversing Fourth Circuit's ruling that failure to exhaust was justified where prisoner reasonably—even though mistakenly—believed he had exhausted remedies). This Court cannot simply ignore the nonexhaustion of administrative remedies by Mr. Hamilton to reach the merits of his Eighth Amendment claim. *Cf. Farmer v. Brennan*, 511 U.S. 825, 847 (1994) ("[w]hen a prison inmate seeks injunctive relief, a court need not ignore the inmate's failure to take advantage of adequate prison procedures, and an inmate who needlessly bypasses such procedures may properly be compelled to pursue them.")

Third, Mr. Hamilton has not shown a likelihood of success on the merits for the separate reason that his Eighth Amendment claim as presently alleged is weak on its face. The Eighth Amendment requires that prison officials take reasonable measures to protect prisoners from violence at the hands of other prisoners. *See Farmer*, 511 U.S. at 832; *see id.* at 834 (in failure-to-protect context, the prisoner must show (1) "that he is incarcerated under conditions posing a substantial risk of serious harm," and (2) the prison official is, subjectively, deliberately indifferent to the prisoner's health or safety). Mr. Hamilton has not shown that there is a "substantial risk of serious harm" to him. In the last year, words have been spoken and cellmates have moved away, but Mr. Hamilton does not indicate that any of them have done or threatened anything physical to him. A prisoner does not need to wait to be attacked to press an Eighth Amendment claim, but there must still be a substantial risk of serious harm before a constitutional claim is stated. *See id.* at 845. His failure to show a likelihood of success on the merits weighs against the issuance of a TRO or preliminary injunction.

Finally, Mr. Hamilton does not show the need for a TRO without any notice to Defendants, who have not yet been served with process in this action. Federal Rule of Civil Procedure 65(b)(1) provides that a TRO can issue without notice to adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the

4

1 movant certifies in writing the efforts to give notice and the reasons why notice should not be
2 required. These stringent requirements "reflect the fact that our entire jurisprudence runs counter
3 to the notion of court action taken before reasonable notice and an opportunity to be heard has
4 been granted both sides of a dispute." *Granny Goose*, 415 U.S. at 423. Additionally, Mr.
5 Hamilton does not provide any information about his efforts to give notice to Defendants, as he
6 must under Rule 65(b)(1) and why such notice should not be given. His failure to satisfy Rule
7 65(b)(1) is fatal to his *ex parte* request.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *ex parte* request for a TRO or injunction is **DENIED**. Docket No. 11.

**IT IS SO ORDERED**.

Dated: January 10, 2020

_____
EDWARD M. CHEN
United States District Judge